HANSON, Appellant, v. GRAND LODGE OF THE BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN and others, Respondents.*

*March 5—April 2, 1963.*

---

[2] Sec. 330.21 "WITHIN TWO YEARS. . . .

"(2) An action to recover damages for libel, slander, assault, battery, or false imprisonment."

* Motion for rehearing denied, with $25 costs, on June 4, 1963.

For the appellant there were briefs by *Alex B. Cameron* and oral argument by *Mr. Cameron* and *Mr. Dale G. Waterman,* both of La Crosse.

For the respondents there was a brief by *Shea & Hoyt* of Milwaukee, attorneys, and *Ralph M. Hoyt* of Milwaukee, and *Harold C. Heiss* of Cleveland, Ohio, of counsel, and oral argument by *Ralph M. Hoyt.*

Gordon, J. The Brotherhood of Locomotive Firemen & Enginemen entered into an agreement with the Chicago, Burlington & Quincy Railroad Company which called for a union shop. Pursuant to this agreement, the railroad company was required to dismiss from its service, upon demand of the Brotherhood, any employee who failed to pay his dues to the union. This agreement was authorized by paragraph Eleventh of sec. 152 of the Railway Labor Act (45 USCA, p. 481, sec. 152 (a)), which permitted railway labor organizations and carriers:

". . . to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such

agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class; . . ."

We fully agree with the assertion of the learned trial judge relative to the Brotherhood's right to insist upon Hanson's being discharged from his employment:

"The acts leading to the demand for removal and the termination of employment by the carrier at the insistence of the union are strictly within the contemplation of the union shop agreement and the law authorizing such agreements. The union merely asserted a contract right. The purpose of the law is simply to require the beneficiaries of trade unionism to contribute to its costs. The plaintiff chose not to and the ordinary consequences occurred."

In his memorandum opinion, Judge Gergen also made the following comment, which we adopt:

"As the law says that membership is a condition precedent for continued employment, except if membership is terminated for reasons other than nonpayment of dues, it surely means that when membership is terminated for nonpayment of dues employment is lost. This court is unaware of any law which would compel the union to reinstate the errant member."

The agreement between the Brotherhood and the C.B.& Q. also provides that an employee shall be entitled to union membership "upon the same terms and conditions as are generally applicable to other members, . . ." Hanson has not shown that any discrimination was applied in connection with his application for readmission; it would appear that he was treated no differently than any other member who had thrice previously failed to pay his dues.

There remains for our determination the issue of whether Hanson had successfully reinstated his membership. In his complaint Hanson alleges that, "On or about the 13th day of October, 1953, plaintiff reinstated his membership."

In paragraph five of their answer, the defendants deny this allegation and set forth the union's requirements regarding an application for readmission to membership. The aforesaid answer is buttressed by affidavits which are a part of this record on appeal.

At first blush it might appear that an issue of fact has been presented as to whether Hanson had reinstated his membership. Our study of the record, however, persuades us that there is no issue of fact which would warrant a trial. In *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 244, 105 N. W. (2d) 305, it was stated:

"As has been said many times by this court, the inquiry on summary judgment is not to decide the questions of fact raised by the affidavits and other proof, but to decide whether such questions exist and should be submitted to the trier of the facts."

Art. 14 of the constitution of B.L.F.& E. relates to applications for membership. Sec. 30 (a) provides in part:

"Applications for membership must bear the signatures of two (2) members in good standing."

Sec. 30 (e) provides:

"A former member shall not be readmitted under this section without the consent of the general secretary and treasurer."

The application which Mr. Hanson submitted on October 15, 1953, did not bear the signatures of two members in good standing and thus would appear to constitute a violation of sec. 30 (a). It is arguable that sec. 30 (a) relates only to original applications and not to reapplications, but there can be no doubt that Hanson's application failed under sec. 30 (e), since the record is clear that his readmission did not receive the consent of the general secretary and treasurer.

Although Hanson was given a receipt for "back dues" at the time of his payment of $30 on October 15, 1953, this did not constitute a reinstatement of his membership. The payment was made to the union's financial secretary, who has submitted an uncontradicted affidavit which states the following:

"At the time of filing said application the plaintiff paid to affiant the sum of $30. Such payment was made solely for the purpose of making good a check which the plaintiff had given in January, 1952, on account of his dues for that month, which check had been refused payment by the bank on which it was drawn, on the ground of insufficient funds. Upon receiving such payment of $30 on October 15, 1953, affiant as financial secretary gave the plaintiff a receipt which recited that the payment was received for 'back dues.' "

The financial secretary of the union was not authorized to readmit Hanson, since the constitution of the union required approval of the general secretary and treasurer. In addition, the following language appears on the application which Hanson submitted:

"I understand and agree that no financial secretary, or other officer or representative of the lodge or Brotherhood, is authorized to receive any assessment until my application shall have been approved by the general secretary and treasurer. Any money I may pay to any officer or representative of the lodge or Brotherhood, pending approval of my application, is paid to him as my agent and for my convenience, and in the event my application is rejected I will look to such officer or representative for the return of the amount so advanced."

The most that can be said for Hanson is that he took an initial step on the path toward readmission, but he did not succeed in obtaining entrance.

There was no duty on the part of the union to reinstate Hanson. In a federal court case involving the problem of

reinstatement of persons whose membership in the Brotherhood was terminated as a consequence of nonpayment of dues, it was said:

"When plaintiffs applied for reinstatement in Brotherhood, it was within the discretion of that organization whether or not they should be reinstated. There is no provision in the statute or in the agreement with B. & O. which requires such action.

"The courts cannot require individuals or associations to be forgiving or generous . . . ." *Alabaugh v. Baltimore & Ohio R. Co.* (D. C. Md. 1954), 125 Fed. Supp. 401, 407, affirmed (4th Cir. 1955), 222 Fed. (2d) 861, certiorari denied (1955), 350 U. S. 839, 76 Sup. Ct. 77, 100 L. Ed. 748.

Hanson, in his affidavit opposing the motion for summary judgment, cites a "Memorandum of Agreement in Connection with the Application of Rule 45 of Locomotive Firemen & Hostlers' Agreement," to wit:

" 'A fireman *filing an application for employment* will be notified within forty-five days of the acceptance or rejection of his application. If not notified within forty-five days he will be considered as accepted.' " (Emphasis added.)

Since Hanson was never notified of the acceptance or rejection of his application for membership in B.L.F.& E., he claims that his application must be deemed to have been accepted after forty-five days had elapsed. It is obvious that the foregoing refers to an application for employment with C.B.& Q., and does not govern an application for membership in B.L.F.& E. Therefore, Hanson's claim is without merit.

We conclude that there are no issues for trial. Hanson voluntarily relinquished his membership in the union by his nonpayment of dues. Such membership was a condition precedent to continued employment. The Brotherhood was under no obligation to reinstate Hanson. His inchoate application, together with the payment of $30 back dues, did not

fulfil the union requirements so as to constitute readmission. The union was warranted in demanding that the railroad company terminate Hanson's employment. The trial court properly granted summary judgment dismissing the complaint.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.